**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**SARAH BETH MECKLEY**,

                Petitioner,

**v.**

**UNITED STATES OF AMERICA,**

                Respondent.

**CIVIL ACTION NO.: 1:16-CV-232
CRIMINAL ACTION NO.: 1:15-CR-49
(KEELEY)**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case arises from Sarah Beth Meckley's ("Petitioner") Motion to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody. Because Petitioner's

claims are procedurally defaulted, waived, or without merit, the undersigned

recommends that Petitioner's motion be denied and dismissed with prejudice.

### II.    FACTS & PROCEDURAL HISTORY

#### A.  Petitioner's Conviction, Sentence, and Appeal

In May 2014, Petitioner set fire to her employer's main office building in

Morgantown, West Virginia, hoping to destroy evidence of the $400,000 that she

embezzled since 2009. About one year later, Petitioner was charged in a one-count

information with arson of a building in interstate commerce. Less than a month later,

she pleaded guilty to the same. Despite cooperating with law enforcement, the

Government concluded that Petitioner's cooperation did not amount to "substantial

assistance" and thus did not move this Court to depart from her mandatory minimum

sentence under 18 U.S.C. § 3553(e) and U.S.S.G. § 5k1.1.[1] Petitioner was then sentenced to five years in prison (the mandatory minimum), two years of supervised release, $100 special assessment, and $1,246,124.36 in restitution. Her sentence was later affirmed on appeal. United States v. Meckley, 652 F. App'x 207 (4th Cir. 2016).

### B.  Petitioner's § 2255 Motion

Having exhausted her rights on appeal, Petitioner timely filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, arguing that (1) her trial counsel, L. Richard Walker, Esq., was constitutionally ineffective and (2) the Government breached its agreement with her to move for a downward departure in exchange for her substantial assistance. See generally Pet'r's Mem. Law Supp. Her Mot. Filed Under 28 U.S.C. § 2255, ECF No. 1-1.[2] In response, the Government argues that (1) Petitioner's counsel was not constitutionally ineffective for failing to memorialize an agreement that did not exist, (2) Petitioner waived her right to collaterally attack her sentence, and (3) the Government did not agree to move for a downward departure. See generally Gov.'s Opp'n Pet'r's § 2255 Mot, ECF No. 3.

Although the Government argued that an evidentiary hearing was not necessary, id. at 9, the undersigned held an evidentiary hearing to address one factual dispute: Whether the Government made a subsequent (post plea) oral agreement to move for a downward departure in exchange for Petitioner's cooperation or substantial assistance.

Having considered the parties' briefs, evidence, and argument, the undersigned addresses each argument, in turn, below.

---

[1] This motion for a downward departure is also known as a "downward-departure motion," "substantial-assistance motion, and "§ 5k1.1 motion."

[2] All ECF numbers cited in this report and recommendation refer to Civil Action No.: 1:16-cv-232.

### III.    DISCUSSION

**A.  Legal Standard**

Under 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." Id. (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." Id. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." Id. (citing Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)).

**B.  Petitioner's § 2255 Motion Lacks Merit**

**1.  Petitioner's Counsel Was Not Constitutionally Ineffective**

As outlined above, Petitioner's motion claims that she is entitled to relief because she ostensibly received ineffective assistance of counsel.[3] ECF No. 1-1 at 2–4.

---

[3] When she entered into her plea agreement and pleaded guilty, Petitioner retained her right to collaterally attack her conviction or sentence under § 2255 by arguing ineffective assistance of counsel. See infra Section III.B.2.a.

Specifically, Petitioner argues that her counsel was constitutionally ineffective because he did not "require [the Government] to reduce an implied promise for a downward departure motion to writing in the final plea agreement." Id. at 2. This claim lacks merit.

To succeed on an ineffective-assistance-of-counsel claim, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle, 269 F. Supp. 3d at 726 (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)); see also Hill v. Lockhart, 474 U.S. 52, 58–59 (1985) (holding that "the two-part [Strickland standard] applies to challenges to guilty pleas based on ineffective assistance of counsel").

To satisfy the first prong, a petitioner must show that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687–88. But "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. To satisfy the second prong, in the context of guilty pleas, a petitioner "must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "The Petitioner must 'satisfy both prongs, and a failure of proof on either

4

prong ends the matter.'" <u>Beyle</u>, 269 F. Supp. 3d at 726 (quoting <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004)).

Petitioner satisfies neither. First, Petitioner has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." <u>Strickland</u>, 466 U.S. at 689. Although Petitioner insists that her counsel's performance was objectively unreasonable by failing to reduce the Government's "implied promise" to writing, Petitioner herself critically concedes that her counsel <u>advised</u> her that the Government would not agree to move for a downward departure in the written plea agreement. ECF No. 1-1 at 2 ("The Petitioner was <u>advised</u> by counsel that the [Government] would <u>not</u> explicitly promise the downward departure the [sic] plea agreement . . . ." (emphasis added)). He then advised her that "cooperation with the government <u>could</u> likely result in a motion for a downward departure . . . ." <u>Id.</u> (emphasis added). Taken together, this advice falls within the wide range of reasonable professional assistance. Before entering into the plea agreement, Petitioner 's counsel advised her of her options: She could (1) plead guilty to an information and cooperate with the Government, which could—but was not guaranteed to—result in a substantial-assistance motion for a downward departure, or (2) be indicted and go to trial in the face of overwhelming evidence. This was plainly reasonable. Because the Government did not agree to move for a downward departure in exchange for Petitioner's cooperation, Petitioner's counsel was not constitutionally ineffective for failing to reduce that non-existent agreement to writing.

Second, even if her counsel were constitutionally ineffective, Petitioner still fails to show that there is a "reasonable probability that, but for counsel's errors, [s]he would

5

not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. In other words, Petitioner fails to show that, but for failing to reduce the Government's non-existent agreement to move for a downward departure to writing, she "would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. Tellingly, after her counsel advised her that the Government would make no such promise in the plea agreement, Petitioner did <u>not</u> insist on going to trial. Instead, she chose to plead guilty and cooperate with the Government, knowing that the Government could—but was not guaranteed to—move for a downward departure. Indeed, Petitioner even knew that cooperation alone was not enough; her cooperation would have to amount to "substantial assistance," a determination that is left to the Government's "unbridled discretion . . . ." <u>United States v. Dixon</u>, 988 F.2d 228, 230 (4th Cir. 1993).

Petitioner's Rule 11 plea colloquy confirms this understanding. There, the Government summarized the contents of the plea agreement, including the final paragraph which confirms that there are "no other agreements, understandings or promises between the parties other than what is contained in the agreement." ECF No. 3-1 at 36. Then, the court and Petitioner had these exchanges:

> THE COURT:          All right. Now did you understand and agree with the terms of the plea agreement when you signed it?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:          Is there anything else that's been agreed to, either orally or in another writing between you and the Government that has not been disclosed to me?
> THE DEFENDANT: No, ma'am.
> . . .
>
> THE COURT:          Okay. Thank you. Do you have any questions about the terms of your plea agreement?
> THE DEFENDANT: No.
> . . .

6

> THE COURT:          Okay. Mr. Walker, does your client
> understand what she's about to do?
> MR. WALKER:         She does.
> THE COURT:          All right. Do you have any questions or
> concerns before we proceed?
> THE DEFENDANT: No, ma'am.
> . . .
>
> THE COURT:          Has anybody promised you something
> in connection with this case other than the terms--what is
> contained in the terms of the plea agreement?
> THE DEFENDANT: No, ma'am.
> THE COURT:          Has anybody predicted your exact
> sentence in this case?
> THE DEFENDANT: No, ma'am.
> . . .
>
> THE COURT:          Okay. Has Mr. Walker adequately
> represented you in this matter?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:          Has he left anything undone that you
> think he should have undertaken on your behalf to
> investigate the case or to negotiate with the government?
> THE DEFENDANT: No, ma'am.

Id. at 37, 47, 55, 59–60, 60. Based on these exchanges, Petitioner understood the

terms of her plea agreement and confirmed that there were no other agreements—oral

or written—with the Government, other than those explicitly set forth in the plea

agreement. Because Petitioner knew that her plea agreement did not include a

Government obligation to move for a downward departure in exchange for her

cooperation, she cannot now claim that, but for counsel's failure to reduce that very

obligation to writing, she would have insisted on going to trial. Nor can she claim that a

subsequent (post plea) promise to move for a downward departure induced her to plead

guilty. See In re Sealed Case, 686 F.3d 799, 803 (D.C. Cir. 2012) (reasoning that a

defendant could not have been induced to plead guilty by a subsequent promise);

7

United States v. Hart, 397 F.3d 643 (8th Cir. 2005) (holding petitioner was not entitled to relief because the Government's alleged oral promise to file a substantial-assistance motion—made after petitioner had pleaded guilty—"was not part of the inducement or consideration underlying the guilty plea"). Indeed, Petitioner concedes that the Government made no such promise. See infra Section III.B.2.c.

In short, Petitioner's ineffective-assistance-of-counsel claim lacks merit because she cannot satisfy either Strickland prong.

### 2. Petitioner's Breach-of-Contract Claim is Waived, Procedurally Defaulted, or Without Merit

Next, Petitioner argues that the Government "breached its agreement with Petitioner by not submitting a motion for a downward departure . . . ." ECF No. 1-1 at 4. In support, Petitioner claims that after executing her plea agreement with the Government, the parties entered into a subsequent agreement requiring the Government to move for a downward departure in exchange for her cooperation, which she believes amounted to substantial assistance. Id. at 4–6. This claim fails for three reasons.

### a. Petitioner Waived Her Right to Collaterally Attack Her Conviction and Sentence

Petitioner knowingly and voluntarily waived her right to collaterally attack her conviction and sentence under § 2255 unless she raises claims of ineffective assistance of counsel or prosecutorial misconduct.

A defendant may waive her right to collaterally attack her conviction and sentence, "so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "Statements that a defendant makes to the court

during his guilty plea hearing can serve as strong evidence that a waiver was knowing and voluntary." Braxton v. United States, 358 F. Supp. 2d 497, 500 (W.D. Va. 2005) (citing United States v. Brown, 232 F.3d 399, 405–06 (4th Cir. 2000)). Indeed, "[a] defendant's solemn declarations in open court affirming a plea agreement . . . 'carry a strong presumption of verity,'" and "present 'a formidable barrier in any subsequent collateral proceedings.'" Lemaster, 403 F.3d at 221 (quoting United States v. White, 366 F.3d 291, 295, 295–96 (4th Cir. 2004)).

Petitioner's plea agreement reads:

> Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the right . . . to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255. Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he [sic] may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

ECF No. 3-1 at 15 (emphasis added). In no uncertain terms, this paragraph waives Petitioner's right to collaterally attack her conviction or sentence under § 2255, unless she argues ineffective assistance of counsel (as she did above) or prosecutorial misconduct (which she did on direct appeal). So if Petitioner entered into this plea agreement knowingly and voluntarily, she will remain bound by its terms. See Lemaster, 403 F.3d at 220.

Here, the undersigned concludes that Petitioner did just that. During her Rule 11 plea colloquy, Petitioner and the Court had the following relevant exchanges[4]:

> THE COURT:          Thank you, Mr. Cogar. Before I file the original of the plea agreement, Ms. Meckley, I need to ask you a couple of questions. Is this your signature on each page?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:          When you signed it, did you know what you were signing?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:          Did you sign it of your own free will?
> THE DEFENDANT: Yes, Ma'am.
> THE COURT:          It was voluntary?
> THE DEFENDANT: Yes.
> THE COURT:          All right. Now did you understand and agree with the terms of the plea agreement when you signed it?
> THE DEFENDANT: Yes, ma'am.
> . . .
>
> THE COURT:          Okay. . . . Then in paragraph eighteen (b) you're providing a limited waiver of your right to collaterally attack the sentence or the conviction on constitutional grounds, reserving the right to challenge claims of ineffective assistance of counsel, which would be by you against Mr. Walker if that were to occur or prosecutorial misconduct, which would be by you against Mr. Cogar. You've stated in days before this that you know of no evidence of such ineffective assistance or prosecutorial misconduct. Is that still the case?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:          Okay. Thank you. Do you have any questions about the terms of your plea agreement?
> THE DEFENDANT: No.
> . . .
>
> THE COURT:          Now the waiver in your plea agreement of your right to appeal does not bar you from pursuing claims that your conduct--that you plea was involuntary or that it was a result of prosecutorial misconduct or a--an ineffective attorney but you've waived the other issues and you've

---

[4] Andrew Cogar was the Assistant United States Attorney prosecuting the case.

> stated that you don't believe you have any evidence of either
> misconduct or ineffectiveness. Do you understand that?
> THE DEFENDANT: Yes, ma'am.

ECF No. 3-1 at 36–37, 47, 51–52. These exchanges prove that Petitioner understood

the plea agreement—including the term waiving her right to collaterally attack her

sentence and conviction unless she claimed ineffective assistance of counsel or

prosecutorial misconduct—and entered into that agreement knowingly and voluntarily.

In sum, Petitioner knew what she was signing, she understood its terms, and she

signed it voluntarily.

Petitioner argues that she should not be bound by the waiver for two reasons.

Both are unavailing. First, Petitioner claims that she should not be bound by the

appellate waiver because her counsel was constitutionally ineffective when negotiating

the plea agreement. ECF No. 1-1 at 4. But again, Petitioner's counsel was not

constitutionally ineffective by failing to reduce a non-existent agreement to writing. See

supra Section III.B.1. Second, Petitioner argues that "even if counsel was not

ineffective, the integrated plea agreement with the waiver of appellate rights was signed

*before* the breach of the plea occurred at sentencing based on subsequent events,

giving way to the Petitioner's right to seek a remedy." ECF No. 1-1 at 4 (emphasis in

original). In other words, Petitioner claims that she should not be bound by the appellate

waiver which preceded the Government's alleged promises to move for a downward

departure. But this argument assumes that the Government did make a subsequent

promise to move for a downward departure in exchange for Petitioner's cooperation or

substantial assistance. For the reasons below, it is clear that the Government made no

such promise. See infra Section III.B.2.c.

11

Because the Government did not subsequently agree to move for a downward departure, Petitioner remains bound by the terms of her written plea agreement, terms that she agreed to knowingly and voluntarily. And bound by those terms, Petitioner waived her right to collaterally attack her conviction and sentence under § 2255.

### b. Petitioner's Breach-of-Contract Claim is Procedurally Defaulted

Even if not waived, Petitioner's claim is procedurally defaulted.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (cleaned up). As a result, a petitioner cannot raise an argument in a post-conviction collateral attack that she did not raise on direct appeal. See, e.g., Sanchez-Llamas v. Oregon, 548 U.S. 331, 351 (2006) (citing Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley, 523 U.S. at 621). But courts may excuse procedural default when a petitioner shows "cause" and actual "prejudice," or actual innocence. Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977)); see United States v. Frady, 456 U.S. 152, 167–68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891–92 (4th Cir. 1994). "'Cause' to excuse a procedural default requires some objective factor external to the defense that impeded counsel's efforts to comply with the procedural requirements to raise a claim." Bennett v. United States, No. 3:16-cv-520-RJC, 2018 WL 1187783, at *3 (W.D.N.C. Mar. 7, 2018) (cleaned up) (citing Murray, 477 U.S. at 488; Mikalajunas, 186 F.3d at 490). "For instance, 'cause' is established 'where a constitutional claim is so novel that its legal basis is not reasonably available to counsel.'" Id. (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). "Actual prejudice is then

12

shown by demonstrating that the error worked to petitioner's 'actual and substantial disadvantage,' rather than just creating a possibility of prejudice." Id. (quoting Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)).

Because she did not raise her breach-of-contract claim on direct appeal, see generally Meckley, 652 F. App'x 207, Petitioner's claim is procedurally barred unless she shows "cause" and actual "prejudice," or actual innocence, Bousley, 523 U.S. at 622. Here, Petitioner cannot show "cause" because her breach-of-contract claim is hardly novel and the facts supporting this claim were readily available to her on direct appeal. Indeed, on direct appeal, Petitioner claimed that this same conduct amounted to prosecutorial misconduct. And Petitioner does not allege actual innocence. Because Petitioner cannot show "cause" and fails to allege actual innocence, Petitioner's claim is procedurally defaulted for not raising it on direct appeal of her original judgment.

### c. Petitioner's Breach-of-Contract Claim Lacks Merit

Even if her breach-of-contract claim is not procedurally defaulted or waived, Petitioner is still not entitled to relief because her claim lacks merit.

Because Petitioner's plea agreement did not require the Government move for a downward departure in exchange for Petitioner's cooperation, see United States v. Ricks, 398 F. App'x 135, 138 (6th Cir. 2010) ("[N]o case stands for the proposition that the language in [the defendant]'s plea agreement—which fails to mention a § 5K1.1 motion at all—binds the government to recommend a departure."), the undersigned must determine whether the parties later amended the plea agreement and, if so, whether the Government breached that agreement. United States v. Martin, 25 F.3d 211, 217 (4th Cir. 1994) ("If the government breaches express or implied terms of a plea

13

agreement, a violation of due process occurs." (citations omitted)). That analysis is guided by contract law. See United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993); see also United States v. Wood, 378 F.3d 342, 348 (4th Cir. 2004) ("The law governing the interpretation of plea agreements is an "amalgam of constitutional, supervisory, and private contract law concerns." (cleaned up) (citation and footnote omitted)).

Although a subsequent oral promise by the Government can amend a written plea agreement, see, e.g., United States v. Edwards, No. 98-6300, 2000 WL 219754 (4th Cir. Feb. 25, 2000) (per curium), Petitioner conceded at the evidentiary hearing that the Government made no such promise—oral or written—to move for a downward departure in exchange for her cooperation. Instead, she argues that the Government's "course of conduct," "course of dealing," or "course of performance" in other criminal cases obligated it to move for a downward departure in her case. In support, Petitioner elicited testimony at the evidentiary hearing from her trial counsel, Mr. Walker, that her cooperation with the Government was much like or no different from the cooperation of defendants in other cases, cooperation that amounted to "substantial assistance" and resulted in successful downward-departure motions in those cases. Indeed, Mr. Walker testified that, in his fifteen years of practice as an assistant federal public defender, he could not remember another defendant cooperate as much as Petitioner had and not receive the benefit of a downward-departure motion. And Petitioner testified that she "assumed"—perhaps mistakenly—that the Government would move for a downward departure based on her like cooperation. So the question is whether the Government's "course of conduct," "course of dealing," or "course of performance" for determining

14

substantial assistance in other criminal cases, alone, requires it to move for a downward departure in Petitioner's case. The answer is surely not.

Although the Fourth Circuit has not yet addressed the question, other courts have rejected similar arguments. See, e.g., United States v. Doe, 233 F.3d 642, 646 (1st Cir. 2000) (rejecting the defendant's argument "that the information he provided was no different, quantitatively or qualitatively, from information provided by other defendants for whom the government did request downward departures"). And for good reason: Binding the Government's substantial-assistance determination in one case to its substantial-assistance determination in another case would remove all discretion from the determination, discretion that the Fourth Circuit has described as "unbridled." Dixon, 988 F.2d at 230. Indeed, doing so would limit the discretion of a recently appointed United States Attorney, appointed under one presidential administration, to that of his predecessor, appointed under another presidential administration, despite having (presumably) different priorities when it comes to enforcing federal law. It would even limit the discretion of U.S. Attorneys within the same circuit because "substantial assistance" in Baltimore, Maryland is likely different than "substantial assistance" in Morgantown, West Virginia. Given the substantial public policy considerations present here, the undersigned is "disinclined to chase after claims of differential treatment in assessing whether a particular defendant provided substantial assistance because the range of factors that may impact the government's discretion is unlikely to be a perfect match from one case to another." Doe, 233 F.3d at 646.

That is not to say that the Government's discretion is necessarily without limit. While some circuits have held that courts may conduct a bad faith review of the

Government's refusal to file a substantial-assistance motion, see, e.g., United States v. Knights, 968 F.2d 1483, 1487 (2d Cir. 1992); United States v. Jones, 58 F.3d 688 (D.C. Cir. 1995), other circuits following Supreme Court precedent have held that the government's decision can be reviewed only for unconstitutional motives, see, e.g., United States v. Benjamin, 138 F.3d 1069, 1073 (6th Cir. 1998); see also Wade v. United States, 504 U.S. 181, 185–86 (1992) ("[W]e hold that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive."). Because the Fourth Circuit has not yet addressed the question, the undersigned will review only the Government's decision here for an unconstitutional motive, which Petitioner does not allege. See generally ECF Nos. 1, 1-1. For example, Petitioner does not allege that the Government refused to file a substantial-assistance motion because of her race or religion. See generally id. And "generalized allegations of improper motive" do not entitle Petitioner to relief. Wade, 504 U.S. at 186. That is especially so when the Government's explanation logically supports its determination that Petitioner's cooperation did not amount to substantial assistance: Although Petitioner participated in two controlled buys and wore a wire in a bar associated with criminal drug activity, that cooperation did not lead to any arrests or convictions by the time she was sentenced. ECF No. 3 at 3. And Petitioner does not argue that her cooperation later (after sentencing) amounted to substantial assistance, see generally ECF Nos. 1, 1-1, entitling her to a government motion for a sentence reduction under Federal Rule of Criminal Procedure 35(b). Indeed, Petitioner has offered no evidence to contradict the facts supporting the Government's substantial-assistance determination.

16

Even Petitioner's "course of conduct," "course of dealing," or "course of performance" argument does not entitle her to relief. All three concepts refer to conduct, dealings, or performance between two parties to a contract, not unrelated third parties. See, e.g., 19 Richard A. Lord, Williston on Contracts § 53:28 (4th ed.) ("[A] 'course of dealing' [i]s a sequence of conduct concerning previous transactions between the parties to a particular transaction . . . ."); id. ("A 'course of performance' is a sequence of conduct between the parties to a particular transaction . . . ."). In other words, the Government here would only be bound by its course of conduct, dealings, or performance with Petitioner, not defendants in other cases who are unrelated third parties. In addition, all three concepts are used to explain, interpret, or supplement a contract, 28 Lord, supra § 70:141, not to amend or vary the terms of the contract, 12 Lord, supra § 34:7. And Petitioner concedes that the Government—the only other party to this case—did not promise (orally or in writing) to move for a downward departure in exchange for her cooperation. So Petitioner concedes that the Government has done nothing, here, to create her expectation that she was entitled to a substantial-assistance motion.

The only concept of contract law that seems to support Petitioner's argument that the Government should be bound by its conduct in other cases is the "usage of trade," which "is any practice or method of dealing that has such regularity of observance in a place, vocation, or trade that it justifies an expectation that it will be observed with respect to the transaction in question." 19 Lord, supra § 53:28.  But even that concept is limited to explaining, interpreting, or supplementing a contract, not to amend or vary the terms of a contract. 12 Lord, supra § 34:7. In any event, no case holds that the

17

Government's substantial-assistance determination in one case will bind it in another, and this case will not be the first.

In sum, Petitioner's breach-of-contract claim lacks merit because (1) Petitioner's plea agreement did not require the Government to file a substantial-assistance motion, (2) the Government did not subsequently promise to move for a downward departure in exchange for Petitioner's cooperation, and (3) the Government's substantial-assistance determinations in other criminal cases do not bind the Government here.

## IV.   RECOMMENDATION

For all these reasons, I find that Petitioner's claims of error are procedurally defaulted, waived, or without merit. Accordingly, I **RECOMMEND** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 1:16-CV-232, ECF No. 1; Criminal Action No. 1:15-CR-49, ECF No. 68] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based on this Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

18

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 26th day of July, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE